Ninth Circuit Case No. 18-56414

Date of Decision: January 15, 2021 DktEntry: 58-1

The Honorable Kim McLane Wardlaw, Mary H. Murguia, and
Eric D. Miller, Circuit Judges, Presiding

## THE UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

_____

TERENCE B. TEKOH, individually,

*Plaintiff-Appellant,*

vs.

COUNTY OF LOS ANGELES, a local public entity, et.al.

*Defendants-Appellees.*

_____


**DEFENDANTS-APPELLEES' PETITION FOR REHEARING *EN BANC***

_____

*On appeal from two (2) unanimous jury verdicts in Appellee's favor in*
*The United States District Court of the Central District of California,*
Case No. 2:16-cv-07297-GW (SKx) Honorable United States District Judge
George H. Wu, Presiding

_____

Rickey Ivie, Esq.
Antonio K. Kizzie, Esq.
**IVIE McNEILL WYATT PURCELL & DIGGS, APLC**
444 S. Flower Street, Suite 1800
Los Angeles, California 90071
(213) 489-0028 Telephone; (213) 489-0552 Facsimile
Rivie@imwlaw.com; Akizzie@imwlaw.com
*Attorneys for Defendants and Appellees*
*County of Los Angeles and Sgt. Carlos Vega*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ………………………………………………………………………1

STATEMENT OF COUNSEL OF OVERLOOKED MATERIAL POINTS OF LAW OR FACT ……………………………………………………………...7

ARGUMENT …………………………………………………………………9

I.    THE COURT'S OPINION CONFLICTS WITH AN EXISTING OPINION OF THE EIGHTH CIRCUIT, THE U.S. SUPREME COURT, INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE, AND SUBSTANTIALLY AFFECTS A RULE OF NATIONAL APPLICATION IN WHICH THERE IS AN OVERRIDING NEED FOR NATIONAL UNIFORMITY ………….9

II.    THE COURT OVERLOOKED MATERIAL POINTS OF FACT AND LAW THAT TWO CRIMINAL COURT JUDGES, HENRY J. HALL AND CRAIG E. VEALS, HELD THAT MR. TEKOH WAS NOT "IN CUSTODY" DURING HIS INTERVIEW REQUIRING MIRANDA ADMONITIONS, AND *ALLOWED* THE STATEMENT TO BE INCLUDED IN THE CRIMINAL PROCEEDINGS………11

III.    THE COURT OVERLOOKED MATERIAL POINTS OF FACT AND LAW THAT SGT. VEGA WOULD BE ENTITLED TO QUALIFIED IMMUNITY UNDER THE COURT'S OPINION REGARDING THE *MIRANDA* CLAIM BECAUSE THE LAW WAS NOT CLEARLY ESTABLISHED UNDER THE FACTS FACING SGT. VEGA……………………….………………………….......13

IV.    CONCLUSION …………………………………………………17

# TABLE OF AUTHORITIES

## Cases

*Allen v. McCurry*
449 U.S. 90, 93 (1980)..........................................................................11

*Anderson v. Creighton*
483 U.S. 635, 640 (1987)......................................................................13

*Ashcroft v. al-Kidd*
563 U.S. 731, 741 (2011)................................................................ 14, 16

*Brosseau v. Haugen*
543 U.S. 194, 198 (2004) (per curiam)........................................... 14, 16

*Brown v. Osier*
628 A.2d 125, 128-29 (Maine 1993) ....................................................12

*Cerrato v. San Fransisco Community College District*
26 F.3d 968, 973 n. 16 (9* Cir. 1994) ...................................................12

*Chavez v. Martinez*
538 U.S. 760 (2003)............................................................................6, 9

*Cohen v. Shea*
788 F.Supp. 66, 68-69 (D.Mass. 1992)..................................................12

*D.C. v. Wesby*
138 S. Ct. 577, 589-90 (2018)..............................................................13

*Fogel v. Collins*
531 F.3d 824, 833 (9th Cir. 2008)..........................................................13

*Hannon v. Sanner*
441 F.3d 635, 636–38 (8th Cir. 2006) ........................................... 6, 9, 17

*Inouye v. Kemna*
504 F.3d 705, 712 (9th Cir. 2007) .........................................................13

*International Union of Operating Engineers-Employers iConstr. Indus. Pension, etc. v. Karr*
994 F.2d 1426, 1430 (9th Cir. Wash. 1993) ...........................................................11

*Kisela v. Hughes*
138 S. Ct. 1148, 1153 (2018) ...................................................................................13

*Mandanno v. Pollard*
718 F.2d 845, 850 (7th Cir. 1983) ...........................................................................12

*Parklane Hosiery Co. v. Shore*
439 U.S. 322, 336, fn. 23 99 S. Ct. 645, 654, 58 L. Ed. 2d 552 (1979) .................11

*Reichle v. Howards*
566 U.S. 658, 664 (2012) .........................................................................................13

*White v. Pauly*, —— U.S. ——
137 S.Ct. 548, 552 (2017) ............................................................................... 14, 16

*Wilson v. Layne*
526 U.S. 603, 61 (1999) ...........................................................................................14

## <u>Statutes</u>

42 U.S.C. § 1983 ……………………………………………………..1, 5, 9, 10, 12

289(d) P.C ..................................................................................................................3

## INTRODUCTION

In this 42 U.S.C. § 1983 case, Ms. Sylvia Lemus ("Ms. Lemus"), a LAC-USC Hospital patient told two nurses and nurse supervisors that a hospital employee sexually assaulted her. Defendant-Appellee Sgt. Carlos Vega ("Sgt. Vega"), received the call for service, and interviewed Ms. Lemus for 15 to 30 minutes. During the interview, Ms. Lemus told Sgt. Vega that a male, Black, mid-20s, thin, hospital employee who transported her around the time of her MRI, stuck his finger in her vagina. A forensic sexual assault examination report later revealed Ms. Lemus' vaginal labia laceration consistent with her statement.

Hospital employees told Sgt. Vega that Appellant Mr. Terence B. Tekoh ("Appellant" or "Mr. Tekoh") transported Ms. Lemus, escorted Sgt. Vega to his work area, and identified him. Mr. Tekoh fit the description given by Ms. Lemus "to a T," identified himself, and admitted that he transported Ms. Lemus to her room around the time of her MRI. Sgt. Vega was unsure if it was a crime or merely a misunderstood medical procedure based on his experience with frequent patient allegations against hospital staff most commonly being medical procedures as opposed to crimes, Sgt. Vega asked Mr. Tekoh, "What happened during your transport of Ms. Lemus?" to which Mr. Tekoh responded, "I made a mistake," and requested that they go someplace private to discuss it.

Sgt. Vega and Mr. Tekoh were led to a MRI reading room. Mr. Tekoh

admitted that Sgt. Vega did not curse, yell at, or physically force Tekoh into the MRI room. To avoid "he say she say" and unsure of the situation, Sgt. Vega decided to detain Mr. Tekoh in the MRI reading room while he called for Sgt. Dennis Stangeland (Sgt. Vega's supervisor). While he waited for Sgt. Stangeland to arrive he left the door of the MRI room slightly ajar.

After 10-15 minutes, Sgt. Stangeland arrived and saw Sgt. Vega standing near the door with Mr. Tekoh seated away from him at a small desk writing on a piece of paper. Sgt. Stangeland introduced himself as Sgt. Vega's supervisor. Mr. Tekoh acknowledged Sgt. Stangeland and agreed to speak to him. Sgt. Stangeland observed that Mr. Tekoh appeared calm and displayed no objective symptoms of distress.

Appellees had been trained on *Miranda* admonitions for in-custody interrogations, but did not consider nor place Mr. Tekoh "in custody" for *Miranda* purposes because Mr. Tekoh was merely detained, not handcuffed, and it was not yet clear whether a crime or a misunderstood medical procedure had occurred based on Appellees' experience with many patient allegations against hospital employees stemming from misunderstood medical procedures.

Sgt. Vega asked Mr. Tekoh, "What happened?" Mr. Tekoh stated that he "touched her." When Sgt. Vega asked what Mr. Tekoh meant by "touched her," Mr. Tekoh voluntarily stated that he transported Ms. Lemus after her MRI, pulled

down her bed sheets, raised her hospital gown, and used his right-hand fingers to touch and spread her vaginal labia, even demonstrating how he had done it. Sgt. Stangeland asked Mr. Tekoh if he was attracted to women to which he responded, "Yes." Sgt. Stangeland asked if Mr. Tekoh's fingers penetrated Ms. Lemus' vagina, to which he responded, "No."

Mr. Tekoh was not handcuffed, hit, kicked, or threatened with any violence during this interview. Mr. Tekoh's statement was entirely voluntary and lasted merely five (5) to ten (10) minutes. Mr. Tekoh was arrested for sexual penetration by foreign object 289(d) P.C.

Plaintiff-Appellant Mr. Tekoh, a former Los Angeles County-USC Hospital employee, alleged that Defendant-Appellees Sgt. Vega ("Sgt. Vega") and Sgt. Dennis Stangeland ("Sgt. Stangeland," "Appellees," collectively) arrested him without probable cause, coerced him to falsely confess verbally and in writing that he sexually assaulted in his care, fabricated evidence, and violated his *Miranda* rights. *During the criminal action and following two (2) hearings on the admissibility of Mr. Tekoh's statement admitting to sexually assaulting Ms. Lemus, it was determined by two criminal court judges, Henry J. Hall and Craig E. Veals, that Mr. Tekoh was not "in custody" during his interview requiring Miranda admonitions, and allowed the statement to be included in the preliminary hearing and criminal actions. EOR001817-1818.*

On October 18, 2017, an eight-person jury unanimously found in Appellees' favor against Mr. Tekoh's unlawful arrest, deliberate fabrication and coercion claims ("first trial"). On December 5, 2017, Mr. Tekoh filed a FRCP 59(a) motion for a new trial on all claims against all Appellees. Dkt. 199. On March 8, 2018, the District Court granted, in part, Mr. Tekoh's motion for a new trial, but only as to Mr. Tekoh's Fifth Amendment coerced confession claim against Sgt. Vega based on an insufficient jury instruction.

On October 2, 2018, an eight-person jury unanimously found in Sgt. Vega's favor against Tekoh's Fifth Amendment coerced confession claim ("second trial"), with judgment entered on October 5, 2018. Mr. Tekoh appealed claiming the District Court erroneously instructed the jury as to the *Miranda* rights claim that an un-Mirandized statement was used against him in a criminal trial.

On January 15, 2021, this Court in a lengthy opinion after an exhaustive analysis of U.S. Supreme Court authority, Ninth Circuit authority, and conflicting authority from other circuits, found that the District Court erroneously instructed the jury as to the *Miranda* rights claim, vacated and reversed the judgment and verdict as to the *Miranda* rights claim, and remanded for trial on the Miranda rights claim. Dkt. 58-1.

In reaching its decision, the Court opinion directly conflicts with an existing opinion by another United States Court of Appeals, specifically the Eighth Circuit,

the United States Supreme Court, and substantially affects a rule of national application in which there is an overriding need for national uniformity. Further, this proceeding involves a question of exceptional importance regarding *Miranda* admonitions and § 1983 liability.

In addition, the Court overlooked several material points of fact and law. The Court overlooked a material point of fact and law that during the criminal action there were two (2) hearings on the admissibility of Mr. Tekoh's statement admitting to sexually assaulting Ms. Lemus where it was determined by two criminal court judges, Henry J. Hall and Craig E. Veals, that Mr. Tekoh was not "in custody" during his interview requiring Miranda admonitions, and allowed the statement to be included in the criminal proceedings. These proceedings as applied to this Court's ruling squarely raises the issue of collateral estoppel and/or res judicata as to Mr. Tekoh's *Miranda* claim. EOR001817-1818.

Further, this Court overlooked a material point of fact and law regarding Sgt. Vega's right to qualified immunity as there is no authority "clearly establishing" to every reasonable officer that Sgt. Vega's conduct would be unlawful, *especially here under the circumstances in this medical setting where erroneous patient allegations against hospital staff stemming from medical procedures commonly require informal interviews of hospital staff.*

Applying this Court's holding, essentially every detention and/or interview

of hospital staff pertaining to an allegation no matter how informal and even with no intention of the officer to make an arrest would now require a *Miranda* rights admonition.

Here, Deputy Vega is clearly entitled to qualified immunity. Under *these* facts *and* in light of the ambiguity of this aspect of law based on the plurality opinion of *Chavez v. Martinez*, 538 U.S. 760 (2003) and its progeny the law cannot be considered "clearly established" such that every reasonable officer in Sgt. Vega's position would know his or her actions under these circumstances would be unlawful.

The Court found the District Court itself erroneously interpreted *Chavez* and rejected conflicting authority from the Eighth Circuit in *Hannon v. Sanner* 441 F.3d 635, 636–38 (8th Cir. 2006), all of which supports the conclusion that the law in this area was not "clearly established." Accordingly, Appellees request that the Court reconsider and affirm the unanimous verdict as to the remaining claim, or permit a rehearing *en banc* or limited briefing as to the herein-mentioned issues.

## STATEMENT OF COUNSEL OF OVERLOOKED MATERIAL POINTS OF LAW OR FACT

Appellees hereby respectfully submit this Petition for Rehearing *En Banc* ("Petition") upon the grounds that the proceeding involves a question of exceptional importance, the opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

Appellees also hereby respectfully submit this Petition the Court inadvertently overlooked material points of fact or law. The specific material points of fact or law that the Court overlooked are as follows:

1. The Court overlooked material points of fact and law that two criminal court judges, Henry J. Hall and Craig E. Veals, held that Mr. Tekoh was not "in custody" during his interview requiring Miranda admonitions, and *allowed* the statement to be included in the criminal proceedings raising the issue of collateral estoppel, res judicata, and qualified immunity as to Sgt. Vega.

2. The Court overlooked material points of law regarding whether Sgt. Vega would be entitled to qualified immunity against Mr. Tekoh's *Miranda* claim because the right was not clearly established under the circumstances facing Sgt. Vega.

After consideration of this Petition, Appellees request that the Court reconsider and affirm the verdict as to the remaining claim, or permit a rehearing

*en banc* or limited briefing as to the aforementioned issues.

## ARGUMENT

**I.   THE COURT'S OPINION CONFLICTS WITH AN EXISTING OPINION OF THE EIGHTH CIRCUIT, THE U.S. SUPREME COURT, INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE, AND SUBSTANTIALLY AFFECTS A RULE OF NATIONAL APPLICATION IN WHICH THERE IS AN OVERRIDING NEED FOR NATIONAL UNIFORMITY**

Here, the Court's opinion involves a question of exceptional importance regarding *Miranda* liability, and substantially affects a rule of national application in which there is an overriding need for national uniformity as it essentially creates a bright-line test for an alleged *Miranda* violation.

However, the Court's opinion admittedly conflicts with an existing opinion by another Court of Appeals, specifically the Eight Circuit's opinion in *Hannon v. Sanner* 444 F.3d 635, 636-38 (8th Circ. 2006), that interpreted United States Supreme Court authority in *Dickerson v. United States* 530 U.S. 428 (2000) and *Chavez v. Martinez* 538 U.S. 760 (2003) and held that a Miranda violation cannot form the basis of a § 1983 claim. *See* DktEntry: 58-1, Page 21 of 28.

Further, the Court's bright-line test created in this opinion for an alleged *Miranda* violation does not account for situations, such as this case, where a lower criminal court conducts a hearing, or multiple hearings, as to whether a statement violated *Miranda* rights, found it did *not*, and *allowed* the admission of the statement into criminal proceedings. The Court's opinion and test did not account

for what impact, if any, the aforementioned criminal court's finding has on the law-enforcement officer's liability and/or whether such should or should not collaterally estop a § 1983 claim based on an alleged Miranda violation.

The Court's test also does not account for situations, such as this case and many, where an individual is merely detained pending further investigation for a possible crime, which does not require *Miranda* admonitions. The Court's test also does not account for situations where an individual may willingly give a statement in custody with no interrogation. Each of the aforementioned situations and countless others are implicated by the Court's order.

The Court's opinion as currently written risks significant unnecessary judicial expenditure of resources in "he say, she say" litigation regarding *Miranda* warnings, renders the law unfairly unclear in the aforementioned situations, and encroaches on lower criminal courts' prior findings of the admissibility of statements and no *Miranda* violations despite their being well-equipped to address any such controversies and/or remedy any such violations.

Here, the Court is respectfully requested to permit a rehearing *en banc* or limited briefing on this material point of fact and law or modify its opinion remanding the matter for further briefing and decision by the District Court.

**II. THE COURT OVERLOOKED MATERIAL POINTS OF FACT AND LAW THAT TWO CRIMINAL COURT JUDGES, HENRY J. HALL AND CRAIG E. VEALS, HELD THAT MR. TEKOH WAS NOT "IN CUSTODY" DURING HIS INTERVIEW REQUIRING MIRANDA ADMONITIONS, AND *ALLOWED* THE STATEMENT TO BE INCLUDED IN THE CRIMINAL PROCEEDINGS**

Here, Defendants' Answering Brief on the Merits ("ABM") stated and the Excerpts of Record ("EOR") showed that "During the criminal action, it was determined by two criminal court judges, Henry J. Hall and Craig E. Veals, that Mr. Tekoh was not "in custody" during his interview. EOR001817-1818." See DktEntry 32, Page 25 of 66. However, this Court's opinion made no mention of the impact, if any, a criminal court judge's finding, let alone two judges, has on the Court's analysis, doctrines of collateral estoppel/res judicata, and inherent issues of qualified immunity for Sgt. Vega.

"On the contrary, the whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 336, fn. 23 99 S. Ct. 645, 654, 58 L. Ed. 2d 552 (1979). "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 93 (1980); *International Union of Operating Engineers-Employers iConstr. Indus. Pension, etc. v. Karr*, 994 F.2d 1426, 1430 (9th Cir. Wash. 1993) ("The doctrine of res judicata "is motivated primarily by the interest

in avoiding repetitive litigation, conserving judicial resources, and preventing the moral force of court judgments from being undermined.").

Regarding any dispute as to whether the defendants in this action were "opposing parties" in the prior criminal action, case law considers the government and its officers to be the same. *See Cerrato v. San Fransisco Community College District*, 26 F.3d 968, 973 n. 16 (9* Cir. 1994); *Mandanno v. Pollard*, 718 F.2d 845, 850 (7th Cir. 1983); Cohen v. Shea, 788 F.Supp. 66, 68-69 (D.Mass. 1992); *Brown v. Osier*, 628 A.2d 125, 128-29 (Maine 1993). Accordingly, the government's prosecution of Mr. Tekoh, in part, through Sgt. Vega renders them one and the same.

Here, the two prior judges criminal court rulings clearly and repeatedly decided and addressed the identical issue of the merit Mr. Tekoh's *Miranda* claim in a prior proceeding involving the government and its officers, specifically Sgt. Vega.

However, the aforementioned material fact and analysis of it is not mentioned in the Court's opinion. The Court is respectfully requested to permit a panel rehearing or limited briefing on this material point of fact and law or modify its opinion remanding the matter for further briefing and decision by the District Court.

**III.** **THE COURT OVERLOOKED MATERIAL POINTS OF FACT AND LAW THAT SGT. VEGA WOULD BE ENTITLED TO QUALIFIED IMMUNITY UNDER THE COURT'S OPINION REGARDING THE *MIRANDA* CLAIM BECAUSE THE LAW WAS NOT CLEARLY ESTABLISHED UNDER THE FACTS FACING SGT. VEGA**

Here, the Court overlooked material points of fact and law that under the Court's opinion Sgt. Vega should and would be entitled to qualified immunity because the law was not "clearly established" *under the facts and circumstances facing Sgt. Vega* to where "*every*" reasonable officer would know their conduct to be unlawful. *D.C. v. Wesby*, 138 S. Ct. 577, 589-90 (2018)("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to *every reasonable* officer that his conduct was unlawful *in the situation he confronted*.") (*Emphasis added*); *Reichle v. Howards*, 566 U.S. 658, 664 (2012); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

This is an "objective but fact-specific inquiry." *Inouye v. Kemna*, 504 F.3d 705, 712 (9th Cir. 2007). "I[f] officers of reasonable competence could disagree on [the] issue, immunity should be recognized." *Fogel v. Collins*, 531 F.3d 824, 833 (9th Cir. 2008) "Of course, general statements of the law are not inherently incapable of giving fair and clear warning to officers." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)

The Supreme Court reiterated that "'clearly established law' should not be defined "at a high level of generality," but must be "'particularized' to the facts of

the case." *White v. Pauly*, —— U.S. ——, 137 S.Ct. 548, 552 (2017); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that the relevant inquiry "must be undertaken *in light of the specific context of the case*, not as a broad general proposition")

In other words, it is *Plaintiff's burden* to point to prior case law that articulates a constitutional rule specific enough to alert *these* deputies *in this case* that *their particular conduct under these circumstances* was unlawful. *White*, —— U.S. ——, 137 S.Ct. 548, 552 (2017) (*per curiam*). To achieve that kind of notice, the prior precedent must be "controlling" – from the Ninth Circuit or Supreme Court – or otherwise be embraced by a "consensus" of courts outside the relevant jurisdiction. *Wilson v. Layne*, 526 U.S. 603, 61 (1999).

Here, the Court overlooks material points of fact that the circumstances of this case are not an obvious and typical *Miranda* violation setting awhere a suspect is in obvious custody/arrested at a station, etc. and interrogated about a known crime without *Miranda* warnings.

Here, the Court overlooks significant material points of fact that the *medical and hospital setting* significantly impacts the analysis of whether qualified immunity should apply against Appellant's *Miranda* claim, and there is no case "clearly establishing" the scope of *Miranda* rights in such a medical setting to where every officer would know Sgt. Vega's conduct to be unlawful.

Here, it was *undisputed* that on the day of the incident Ms. Sylvia Lemus ("Ms. Lemus"), a patient at LAC-USC Hospital, told two nurses and nurse supervisors that a hospital employee sexually assaulted her. EOR00756-757, 759, 1589-1590, 1660, 1674. Here, it was *undisputed* that Sgt. Vega interviewed Ms. Lemus for approximately 15 to 30 minutes, during which she told him that a male, Black, mid-20s, thin, hospital employee who transported her around the time of her MRI, stuck his finger in her vagina as she laid recovering on a hospital gurney. EOR000642, 666-669, 709-710, 756-761, 1590, 1592-1594, 1675-1677.

Here, Sgt. Vega and Sgt. Stangeland testified, *and it was undisputed*, that based on their experience at LAC/USC hospital, patients may make allegations against hospital staff that far more often than not are simply misunderstood medical procedures, not crimes, and that such governed their interactions with Mr. Tekoh and belief as to whether he was "in custody" or not for purposes of *Miranda* warnings. EOR000657, 658-664, 712, 722-723, 724, 728, 729-730, 740-741, 743-748, 1022-1023, 1061-1065, 1541, 1550, 1564-1565, 1686-1690, 1695, 1698-17041700, 1704-1706. 1709-1710. 1712.

Here, the Court overlooks material points of law and fact that there is no case "clearly establishing" that an officer must give *Miranda* rights each and every time they merely interview a medical professional in a medical setting about a patient's allegation, when based on that officer's experience more often than not

the allegations are unfounded, not crimes, and merely misunderstood medical procedures, and the officer has not yet decided they have enough information to decide that a crime has even occurred. Here, the Court overlooks material points of fact as to the obvious impractical and inefficient effect the Court's holding would have to a medical setting and environment and the efficient operation of medical facilities, staff and patients.

Here, the Court's opinion overlooks the aforementioned material points of these fact and application of the law to *these facts* regarding *Miranda* and whether an officer under these facts would be entitled to qualified immunity contrary to the U.S. Supreme Court's instruction "'clearly established law' should not be defined "at a high level of generality," but must be "'particularized' to the facts of the case." *White v. Pauly*, ––– U.S. –––, 137 S.Ct. 548, 552 (2017); *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (holding that the relevant inquiry "must be undertaken *in light of the specific context of the case*, not as a broad general proposition")

In addition to the aforementioned, the Court overlooks material facts and law related to Sgt. Vega's entitlement to qualified immunity that: 1) "During the criminal action, it was determined by two criminal court judges, Henry J. Hall and Craig E. Veals, that Mr. Tekoh was not "in custody" during his interview. EOR001817-1818." *See DktEntry* 32, Page 25 of 66; 2) As shown in the Court's

opinion, the case law on this *Miranda* claim was *not* clear and, in fact, the Eighth Circuit's approach on this claim *Hannon v. Sanner* 441 F.3d 635, 636–38 (8th Cir. 2006) was rejected; and 3) If the case law was erroneously interpreted by the District Court, it could not be considered clearly established *under these circumstances* to where "every" reasonable law enforcement officer would know Sgt. Vega's conduct to be unlawful.

Here, The Court is respectfully requested to permit a panel rehearing or limited briefing on this material point of fact and law or modify its opinion remanding the matter for further briefing and decision by the District Court.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the Court is respectfully requested to permit a rehearing *en banc* or limited briefing on this material point of fact and law or modify its opinion remanding the matter for further briefing and decision by the District Court.

Dated: January 27, 2021 **IVIE McNEILL WYATT PURCELL & DIGGS, APLC**

By:  /s/ Antonio K. Kizzie
Rickey Ivie
Antonio K. Kizzie
Attorneys for Defendants-Appellees
County of Los Angeles and Sgt.
Carlos Vega

| Case No. 18-56414 |
|---|

mber(s)

**NOTE:** To secure your input, you should print the filled-in form to PDF (File > Print > *PDF Printer/Creator*).

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

When All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

| 1/29/2021 |
|---|

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Signature (use "s/" format)

| s/ Antonio K. Kizzie |
|---|

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## CERTIFICATE OF SERVICE

When <u>Not</u> All Case Participants are Registered for the Appellate CM/ECF System

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on (date)

| |
|---|

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Signature (use "s/" format)

| |
|---|

Case No. 17-55918

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing or Answers

*Instructions for this form:* 

**9th Cir. Case Number(s)** | 18-56414

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/answer to petition is (*select one*):

Prepared in a format, typeface, and type style that complies with Fed. R. App.

⦿ P. 32(a)(4)-(6) and **contains the following number of words**: 3,568 .

*(Petitions and answers must not exceed 4,200 words)*

## OR

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Antonio K. Kizzie | **Date** | 1/29/2021

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at*

**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| TERENCE B. TEKOH,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>COUNTY OF LOS ANGELES; DENNIS STANGELAND, Sergeant; CARLOS VEGA, Deputy,<br>*Defendants-Appellees*,<br><br>and<br><br>LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; DOES, 1 TO 10,<br>*Defendants.* | No. 18-56414<br><br>D.C. No.<br>2:16-cv-07297-GW-SK<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted April 27, 2020
Pasadena, California

Filed January 15, 2021

Before: Kim McLane Wardlaw, Mary H. Murguia, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Wardlaw

2      TEKOH v. COUNTY OF LOS ANGELES

## SUMMARY[*]

### Civil Rights

The panel vacated the district court's judgment on a jury's verdict, reversed the district court's judgment as to plaintiff's requested jury instruction, and remanded for a new trial in an action alleging, in part, that plaintiff's Fifth Amendment right against self-incrimination was violated when his un-*Mirandized* statement was used against him at his criminal trial.

The district court concluded that the use of the statement alone was insufficient to demonstrate a violation of the right against self-incrimination and, instead, instructed the jury that the plaintiff had to show that the interrogation that procured the statement was unconstitutionally coercive under the totality of the circumstances, with the *Miranda* violation only one factor to be considered.

The panel held that in light of the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), which held that *Miranda* is a rule of constitutional law that could not be overruled by congressional action, where the un-*Mirandized* statement has been used against the defendant in the prosecution's case in chief in a prior criminal proceeding, the defendant has been deprived of his Fifth Amendment right against self-incrimination, and he may assert a claim against the state official who deprived him of that right under § 1983.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court erred interpreting *Chavez v. Martinez*, 538 U.S. 760 (2003), to stand for the proposition that a § 1983 claim can never be grounded on a *Miranda* violation. The panel stated Justice Thomas's plurality opinion, which reasoned in dicta that damages were unavailable for *Miranda* violations, did not command support from five Justices and was based on a rationale significantly broader than those of the concurring Justices. Thus, contrary to the district court's conclusion, the broad principles in Justice Thomas's opinion in *Chavez* were not binding in this case.

The panel held that while the question of liability was ultimately for the jury to decide, plaintiff sufficiently demonstrated a Fifth Amendment violation caused by Los Angeles Sheriff's Deputy Carlos Vega under § 1983, such that the district court erred by failing to instruct the jury on this claim. Moreover, there was also no question that Deputy Vega caused the introduction of the statements at plaintiff's criminal trial even though Vega himself was not the prosecutor.

The panel stated that it was not holding that taking an *un-Mirandized* statement always gives rise to a § 1983 action. The panel held only that where government officials introduce an un-*Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who took the statement. By contrast, in cases like *Chavez*, where the suspect was never charged, or where police coerce a statement but do not rely on that statement to file formal charges, the Fifth Amendment is not implicated.

Finally, the panel could not conclude that it was more probable than not that the jury would have reached the same

verdict had it been properly instructed.  Accordingly, the error was not harmless.  The panel thus vacated the judgment on the jury's verdict and remanded the case for a new trial in which the jury must be properly instructed that the introduction of a defendant's un-*Mirandized* statement at his criminal trial during the prosecution's case in chief alone is sufficient to establish a Fifth Amendment violation.

## COUNSEL

Paul Hoffman (argued) and John Washington, Schonbrun Seplow Harris & Hoffman LLP, Hermosa Beach, California; John Burton and Matt Sahak, Law Offices of John Burton, Pasadena, California;  for Plaintiff-Appellant.

Antonio K. Kizzie (argued) and Rickey Ivie, Ivie McNeill & Wyatt, Los Angeles, California, for Defendants-Appellees.

## OPINION

WARDLAW, Circuit Judge:

We must decide whether the use of an un-*Mirandized* statement against a defendant in a criminal case is alone sufficient to support a 42 U.S.C. § 1983 action based on the Fifth Amendment violation.  The district court concluded that the use of the statement alone was insufficient to demonstrate a violation of the right against self-incrimination and, instead, instructed the jury that the plaintiff had to show that the interrogation that procured the statement was unconstitutionally coercive under the totality of the circumstances, with the *Miranda* violation only one factor to be considered.  Neither the Supreme Court nor our

court has directly addressed this precise question. However, in light of the Supreme Court's decision in *Dickerson v. United States*, 530 U.S. 428 (2000), which held that *Miranda* is a rule of constitutional law that could not be overruled by congressional action, we conclude that where the un-*Mirandized* statement has been used against the defendant in the prosecution's case in chief in a prior criminal proceeding, the defendant has been deprived of his Fifth Amendment right against self-incrimination, and he may assert a claim against the state official who deprived him of that right under § 1983.

## I.

### A.

Terence Tekoh was working at a Los Angeles medical center when a patient accused him of sexual assault. According to the patient, Tekoh lifted her coversheets and made sexual contact while transporting her within the hospital. Hospital staff reported the allegation to the Los Angeles Sheriff's Department.  Deputy Carlos Vega responded to investigate.

Deputy Vega found Tekoh in the MRI section, where he worked transporting patients to and from their MRIs and their rooms, and the two went into a nearby, private room to talk.  Though Deputy Vega questioned Tekoh, he did not advise him of his *Miranda* rights.  By the end of the questioning, Tekoh had written the following statement:

> To who [sic] it may concern,
>
> This is an honest and regrettable apology from me about what happened a few hours ago.  It was  I don't know what suddenly

came over me, but it was certainly the most weakest moment I've ever been caught up with in my life. I've never ever found myself doing such a despicable act. and I am I don't think this is an excuse but I'm single and currently don't have a girlfriend and became very excited after I first saw her vagina accidently. So after dropping her off, I decided to go further by woking [sic] and spreading her vagina lip for a quick view and then went back to my duty post with the intention of masturbating, which I never did.

How Tekoh came to write this statement is hotly disputed and was the focus of the 42 U.S.C. § 1983 claim against Deputy Vega that gave rise to this appeal.

1. *Tekoh's Account of the Questioning*

In Tekoh's telling, when Deputy Vega first approached him, Vega asked if there was somewhere they could speak in private. Tekoh's co-workers suggested the MRI "reading room,"—a small, windowless, and soundproof room used by doctors to read MRIs. When one of Tekoh's co-workers tried to accompany Tekoh into the reading room, Deputy Vega stopped her and told her the interview was private.

Deputy Vega shut the door and stood in front of it, blocking Tekoh's path to the exit. He then accused Tekoh of touching the patient's vagina. Tekoh adamantly denied the allegation. After about 35 to 40 minutes of questioning during which Tekoh refused to confess, Deputy Vega told him (falsely) that the assault had been captured on video so he might as well admit to it. Still, Tekoh did not confess.

Tekoh then asked to speak to a lawyer, but Deputy Vega ignored the request.  At that point, Tekoh grew frustrated and tried to get up and leave the room.  Tekoh testified:

> I made one or two steps, and [Deputy Vega] rushed at me and stepped on my toes, put his hand on his gun and said, "Mr. Jungle Nigger trying to be smart with me.  You make any funny move, you're going to regret it.  I'm about to put your black ass where it belongs, about to hand you over to deportation services, and you and your entire family will be rounded up and sent back to the jungle . . . . Trust me, I have the power to do it."

According to Tekoh, this outburst left him "shaking" and triggered flashbacks to his experiences with police brutality in Cameroon, where he was from.

Deputy Vega then grabbed a pen and paper, put them in front of Tekoh, and told him to "write what the patient said [he] did."  When Tekoh hesitated, Vega put his hand on his gun and said he was not joking.  According to Tekoh, Vega then dictated the content of the written confession and Tekoh, who was scared and "ready to write whatever [Vega] wanted," acquiesced and wrote the statement down.

2.  *Deputy Vega's Account of the Questioning*

Deputy Vega testified to a much different version of events.  According to Vega, when he first arrived at the MRI section, he asked Tekoh what had happened with the patient, and Tekoh said, "I made a mistake."  Tekoh asked if he could "talk to [Vega] away from [his] co-workers and get a little privacy."

After the two went into the MRI reading room, Vega handed Tekoh a sheet of paper and said, "Can you write what happened while I get my sergeant and we can ask you a couple of questions[?]"  According to Vega, Tekoh then wrote out the confession himself without further prompting.

Another officer, Sergeant Stangeland, arrived soon after, joining Deputy Vega in the room with Tekoh.  According to Stangeland, Tekoh indicated that he was willing to talk to the officers.  Deputy Vega then questioned Tekoh in "a very conversational tone," and Tekoh verbally admitted to touching the patient's vagina.  Sergeant Stangeland testified that Tekoh's demeanor was "that of a man who was contrite, who truly, you know, regretted what he had done."

## B.

Tekoh was arrested and charged in California state court with unlawful sexual penetration in violation of California Penal Code § 289(d).  Early on in Tekoh's first criminal trial (before his confession was introduced), a witness for the prosecution revealed evidence that had not been disclosed to the defense, and, with Tekoh's assent, a mistrial was declared.  During Tekoh's retrial, the prosecution introduced Tekoh's confession as evidence of his guilt.  Also during the retrial, Dr. Iris Blandon-Gitlin, an expert on coerced confessions, testified on Tekoh's behalf. The jury returned a verdict of not guilty.

## C.

After his acquittal on the criminal charge, Tekoh filed this action under 42 U.S.C. § 1983 seeking damages for alleged violations of his constitutional rights.  The case began with several claims against multiple defendants, but only one is at issue in this appeal: the claim that Deputy Vega

violated Tekoh's Fifth Amendment right against self-incrimination.

Before the first trial in this case, Tekoh asked the district court to instruct the jury that it should find in his favor on the Fifth Amendment claim if it determined that Deputy Vega obtained statements from him in violation of *Miranda* that were used in the criminal case against him. And because the only issue in dispute on this theory was whether Tekoh was "in custody" during the questioning in the MRI reading room such that *Miranda* warnings were required, Tekoh submitted a proposed jury instruction that would have informed jurors of factors to consider on that point. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam) ("*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'").

The district court refused to instruct the jury on Tekoh's theory, reasoning that the Supreme Court's plurality decision in *Chavez v. Martinez*, 538 U.S. 760 (2003), held that *Miranda* was a mere "prophylactic rule," rather than a "constitutional requirement," and that a § 1983 plaintiff like Tekoh "[could not] use a prophylactic rule to create a constitutional right." Instead, the district court instructed the jury to evaluate Tekoh's claim that Deputy Vega had coerced a confession as if it were a Fourteenth Amendment claim based on fabrication of evidence.[1] So instructed, the jury returned a verdict in favor of Deputy Vega.

---

[1] This instruction required Tekoh to prove that, at a minimum, "[Deputy] Vega used techniques that were so coercive and abusive that he knew, or was deliberately indifferent, that those techniques would yield false information that was used to criminally charge and prosecute Plaintiff."

After the trial, however, the district court concluded that it had erred by instructing the jury to evaluate Tekoh's claim as if it were brought under the Fourteenth Amendment instead of as a violation of the Fifth Amendment. *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1068–69 (9th Cir. 2012) (holding that a coerced confession claim must be brought under the Fifth Amendment, not as a Fourteenth Amendment fabrication-of-evidence claim). It therefore ordered a new trial on the coerced confession claim.

The jury instructions were again contested. Ultimately, the district court gave the jury the following instruction on coerced confessions:

> You must consider the objective totality of all the surrounding circumstances. Whether a confession is improperly coerced or compelled depends on the details of the interrogation.
>
> Factors to consider include, but are not limited to:
>
> (1) The location where the questioning took place (for example at a police station or on a public street), and whether the location was chosen by the person or the officer;
>
> (2) Was the person free to go or was the person under arrest or physically restrained;
>
> (3) Was the length of the questioning oppressive;

(4)   What Plaintiff was told at the beginning of the encounter and throughout its duration;

(5)  The manner in which the person was questioned—for example: was any actual force or infliction of pain used on the person; was the person (or anyone near or dear to him or her) threatened either physically or psychologically; was the officer's gun drawn; did the officer continually shout at the suspect for an extended period; etc.

(6)  If the warnings under the *Miranda* decision (as described below) were required at the time, whether the police advised the person being questioned of his or her right to remain silent and to have a counsel present during the custodial interrogation; and

(7)  Any other factors that a reasonable person would find coercive under the circumstances.

Again, the jury returned a verdict in favor of Deputy Vega.[2] Tekoh timely appeals.

---

[2] In both civil trials, the district court also excluded testimony from Tekoh's coerced confessions expert, Dr. Blandon-Gitlin, who had testified on Tekoh's behalf at his second criminal trial, which resulted in an acquittal.

## II.

We have jurisdiction under 28 U.S.C. § 1291.[3]  We review de novo the district court's rejection of Tekoh's proposed jury instruction on his *Miranda* theory on the ground that it was not a correct statement of the law.[4]  *Smith v. City & Cnty. of Honolulu*, 887 F.3d 944, 951 (9th Cir. 2018) ("We review a district court's formulation of civil jury instructions for an abuse of discretion, but we consider de novo whether the challenged instruction correctly states the law." (citation omitted)).

---

[3] Deputy Vega briefly argues that we lack jurisdiction to review the district court's refusal to instruct the jury on the *Miranda* theory because Tekoh did not list the orders rejecting his proposed *Miranda* instruction in his notice of appeal.  But the district court's pretrial orders regarding the jury instructions merged into the final judgment, so by appealing the judgment, Tekoh "implicitly brought all of the district court's subordinate orders within the jurisdiction of our court."  *Hall*, 697 F.3d at 1070.

[4] Deputy Vega's argument that Tekoh failed to preserve his challenge to the jury instruction lacks merit.  The propriety of Tekoh's requested jury instruction was extensively litigated in both trials.  The district court made clear on several occasions that it understood Tekoh's argument but was not going to change its mind on giving the instruction.  In fact, the court specifically told Tekoh that he had preserved his objection to the refusal to give the instruction.  This was more than enough to preserve the issue for appeal.  *United States ex rel. Reed v. Callahan*, 884 F.2d 1180, 1184 (9th Cir. 1989) (holding that additional objections to the jury instructions are not required "when it is obvious that in the process of settling the jury instructions the court was made fully aware of the objections of the party and the reasons therefor and further objection would be unavailing").

**III.**

Under 42 U.S.C. § 1983, a plaintiff may bring suit for damages against a state official who deprives him of "any rights, privileges, or immunities secured by the Constitution." Whether the district court should have given Tekoh's proposed *Miranda* instruction turns on whether the introduction of Tekoh's un-*Mirandized* statement at his criminal trial constituted a violation of Tekoh's Fifth Amendment rights.

**A.**

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court implemented this guarantee by setting forth "concrete constitutional guidelines" for officers to follow when conducting custodial interrogations. 384 U.S. 436, 441–42 (1966); *see Chavez*, 538 U.S. at 790 (Kennedy, J., concurring) (explaining that *Miranda* warnings were "adopted to reduce the risk of a coerced confession and to implement the Self-Incrimination Clause"). Under *Miranda*, before an individual in custody is interrogated, he must be advised "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444. Thereafter, the officer may proceed with questioning only if the subject of the interrogation agrees to waive these rights. *Id.* at 444–45; *see Berghuis v. Thompkins*, 560 U.S. 370, 382–85 (2010).

*Miranda* marked a significant shift in how courts evaluate the admissibility of confessions. Before *Miranda*, "voluntariness *vel non* was the touchstone of admissibility."

14        Tekoh v. County of Los Angeles

*Davis v. United States*, 512 U.S. 452, 464 (1994) (Scalia, J., concurring). In determining whether a confession could be admitted in criminal proceedings, courts looked to "the totality of all the surrounding circumstances" to determine "whether [the] defendant's will was overborne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). After *Miranda*, however, an officer's failure to provide the requisite *Miranda* warnings or to obtain a valid waiver of the suspect's *Miranda* rights is generally enough, on its own, to "require[] exclusion of any statements obtained."[5] *Missouri v. Seibert*, 542 U.S. 600, 608 (2004).

In the decades following *Miranda*, there was significant debate about the extent to which *Miranda* warnings were constitutionally required. On the one hand, the *Miranda* opinion itself appeared to contemplate that statements taken from a defendant who was in custody but had not been given *Miranda* warnings were inherently compelled, and thus obtained in violation of the Fifth Amendment. *See Miranda*, 384 U.S. at 458 ("Unless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice."); *see also Dickerson*, 530 U.S. at 447 (Scalia, J., dissenting) (acknowledging that the "fairest reading" of *Miranda* is that the use of un-*Mirandized* statements at trial "violates the Constitution"). And *Miranda* involved proceedings in state courts, over

---

[5] *Miranda* supplemented, rather than replaced, the traditional voluntariness test. *Dickerson*, 530 U.S. at 444. Accordingly, a suspect seeking to suppress a confession may show either that it was obtained in violation of *Miranda* or that it was involuntarily given. *Id. But see Berkemer v. McCarty*, 468 U.S. 420, 433 n.20 (1984) ("[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of Miranda are rare.").

which the Supreme Court lacks plenary supervisory control. *See Smith v. Phillips*, 455 U.S. 209, 221 (1982) ("Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

On the other hand, the *Miranda* decision left open the possibility that the specific warnings set out in the opinion might not be necessary if the states or Congress devised other adequate means of protecting against "the inherent compulsions of the interrogation process."  384 U.S. at 467. And more significantly, in several decisions, the Court described *Miranda* warnings as mere "prophylactic rules" or "procedural safeguards" that were "not themselves rights protected by the Constitution."  *New York v. Quarles*, 467 U.S. 649, 653–55 (1984); *Michigan v. Tucker*, 417 U.S. 433, 444 (1974); *see also Oregon v. Elstad*, 470 U.S. 298, 306 (1985) ("The *Miranda* exclusionary rule . . . sweeps more broadly than the Fifth Amendment itself.").

The issue came to a head in *Dickerson v. United States*. *Dickerson* concerned a federal statute, enacted in the wake of the Court's *Miranda* decision, that provided that confessions were admissible as long as they were voluntarily made, regardless of whether *Miranda* warnings had been provided.  530 U.S. at 432; 18 U.S.C. § 3501.  Whether the rule set forth in the statute was constitutionally permissible "turn[ed] on whether the *Miranda* Court [had] announced a constitutional rule"; if it had, Congress could not override that rule by statute.  *Dickerson*, 530 U.S. at 437.  The Court acknowledged that language in *Quarles*, *Tucker*, and other post-*Miranda* decisions could be read to support the view that *Miranda* warnings were not constitutionally required. *Id.* at 437–38.  But the *Dickerson* Court ultimately concluded that *Miranda* was "a constitutional decision" that Congress

could not overrule.  *Id.* at 438–39; *see also id.* at 440 & n.5 (describing *Miranda* as "constitutionally based" and as having "constitutional underpinnings").  Accordingly, the *Dickerson* Court invalidated § 3501. *Id.* at 443–44.

*Dickerson* strongly supports Tekoh's argument that a plaintiff may bring a § 1983 claim predicated on a *Miranda* violation when the un-*Mirandized* statement is used against him in criminal proceedings.  Section 1983 permits suits for damages to vindicate "rights, privileges, or immunities secured by the Constitution."  Because *Dickerson* made clear that the right of a criminal defendant against having an un-*Mirandized* statement introduced in the prosecution's case in chief is indeed a right secured by the Constitution, we conclude that Tekoh has a claim that his Fifth Amendment right against self-incrimination was violated.

## B.

This clear view of the constitutional nature of *Miranda* warnings was later muddied by *United States v. Patane*, 542 U.S. 630 (2004), and *Chavez v. Martinez*, 538 U.S. 760 (2003).  In *Patane*, the Court held, in a fractured decision, that the Constitution did not require suppression of physical evidence found as a result of an interrogation that violated *Miranda*—*i.e.*, the "physical fruits" of a *Miranda* violation. 542 U.S. at 633–34.  Writing for the four-Justice plurality, Justice Thomas described the *Miranda* rule as "sweep[ing] beyond the actual protections of the Self-Incrimination Clause."  *Id.* at 639.  He further concluded that a constitutional violation based on a failure to give *Miranda* warnings could not occur, if at all, until the unwarned statements were admitted at trial, at which point the exclusion of the statements themselves would be a "complete and sufficient remedy" for the violation.  *Id.* at 641–42 (quoting *Chavez*, 538 U.S. at 790 (Kennedy, J.,

concurring)).  However, Justice Kennedy, joined by Justice O'Connor, concurred in the judgment on narrower grounds, holding only that the suppression of physical evidence was not required by the Fifth Amendment because it "does not run the risk of admitting into trial an accused's coerced incriminating statements against himself."  *Id*. at 645 (Kennedy, J., concurring).  Neither justice joined the plurality's broader discussion of *Miranda* as sweeping beyond the protection of the Fifth Amendment.

Previously, in *Chavez*, the Supreme Court had confronted the question of whether a plaintiff could sue under § 1983 for an officer's failure to give *Miranda* warnings when the plaintiff was not charged with a crime, and, therefore, his un-*Mirandized* statements were never used against him in criminal proceedings.  *See* 538 U.S. at 764–65 (plurality opinion).  In a fractured decision consisting of six separate opinions, none of which garnered a majority on anything but the judgment, the Court held that such claims are not viable.

Specifically, Justice Thomas's plurality opinion in *Chavez* concluded that a "criminal case" requires, at the very least, "the initiation of legal proceedings," and that because no proceedings had been brought against the plaintiff, he had not suffered a Fifth Amendment violation.  538 U.S. at 766. Having reached this conclusion, which alone was enough to resolve the case, the plurality nevertheless continued on to discuss *Miranda*.  Citing *Elstad*, *Tucker* and other pre-*Dickerson* cases, the plurality characterized the requirement of *Miranda* warnings as a "prophylactic rule[] designed to safeguard the core constitutional right protected by the Self-Incrimination Clause," *id*. at 770, repeating the points made by Justice Scalia, whose dissent in *Dickerson* was joined by Justice Thomas.  530 U.S. at 447 (Scalia, J., dissenting).  The

18          TEKOH V. COUNTY OF LOS ANGELES

*Chavez* plurality explained that violations of "judicially crafted prophylactic rules do not violate the constitutional rights of any person" and therefore "cannot be grounds for a § 1983 action." 538 U.S. at 772.

The specific holding in *Chavez* does not govern Tekoh's case because unlike the plaintiff in *Chavez*, Tekoh's un-*Mirandized* statements were used against him in criminal proceedings. But the district court read *Chavez* to stand for the broader proposition that a § 1983 claim can never be grounded on a *Miranda* violation. In adopting this reading of *Chavez*, the district court treated Justice Thomas's plurality opinion of four Justices as supplying the controlling precedent here.

The district court went astray by doing so. In *United States v. Davis*, 825 F.3d 1014 (9th Cir. 2016), our court, sitting en banc, examined the question of what rule our court was bound to apply when construing fractured Supreme Court decisions. Addressing the guidelines laid out in *Marks v. United States*, 430 U.S. 188, 193 (1977), we held that a fractured Supreme Court decision "only bind[s] the federal courts of appeal when a majority of the Justices agree upon a single underlying rationale and one opinion can reasonably be described as a logical subset of the other. When no single rationale commands a majority of the Court, only the specific result is binding on lower federal courts." *Davis*, 825 F.3d at 1021–22. In sum, we concluded that "*Marks* instructs us to consider the opinions only of 'those Members who *concurred* in the judgments on the narrowest grounds' when deriving a rule from a fractured Supreme Court decision." *Id.* at 1024 (quoting *Marks*, 430 U.S. at 193).

Applying *Davis* to *Patane* is straightforward. Even though Justice Thomas's plurality opinion spoke broadly about the relationship between *Miranda* and the Fifth

Amendment, Justice Kennedy's concurring opinion was both necessary to the judgment and narrowly focused on the distinction between physical evidence and un-*Mirandized* statements. *Patane*, 52 U.S. at 633–45. Critically, Justice Kennedy's opinion did not echo the plurality's broader discussion of *Miranda*, and it thus controls. *Davis*, 825 F.3d at 1021–22.

While applying *Davis* to *Chavez* is less straightforward, we conclude that none of the six opinions provides a binding rationale. *See Stoot v. City of Everett*, 582 F.3d 910, 923 (9th Cir. 2009). Justice Thomas's plurality opinion, which reasoned in dicta that damages were unavailable for *Miranda* violations, did not command support from five Justices and was based on a rationale significantly broader than those of the concurring Justices. *See Marks*, 430 U.S. at 193. Thus, contrary to the district court's conclusion, the broad principles in Justice Thomas's opinion are not binding here.

None of the other opinions in *Chavez* articulates a principle directly applicable to the facts presented here. Justice Kennedy's opinion was a dissent on the Fifth Amendment claim because he would have affirmed, while the plurality opinion reversed. 538 U.S. at 799.[6] And while Justice Kennedy's concurring opinion suggests that exclusion "is a complete and sufficient remedy" for *Miranda* violations, it assumes that the exclusion of "unwarned statements" is available as a remedy. 538 U.S. at 790 (Kennedy, J., concurring). Justice Kennedy's opinion thus

---

[6] In *Davis*, we left open the question whether we can consider dissents in applying *Marks*. 825 F.3d at 1025; *see also id.* at 1028–30 (Christen, J., concurring) (five judges concurring in the view that *Marks*, on its face, limits review to "the opinions of 'those Members [of the Court] *who concurred in the judgments*'" (quoting *Marks*, 430 U.S. at 193)).

does *not* speak to Tekoh's plight, where exclusion is not available as a remedy because the un-*Mirandized* statements were already used against him in his criminal trial. Exclusion, here, is neither complete nor sufficient.

On the other hand, Justice Souter's concurring opinion, joined by Justice Breyer, expressly noted that "[t]he question whether the absence of *Miranda* warnings may be a basis for a § 1983 action under any circumstance is not before the Court." *Id.* at 779 n.* (Souter, J., concurring).

"When, [as in *Chavez*], no 'common denominator of the Court's reasoning' exists, we are bound only by [and only apply] the 'specific result.'" *Davis*, 825 F.3d at 1028. Here, the "specific result" from *Chavez* does not and cannot apply to Tekoh's particular circumstances because his un-*Mirandized* statement was admitted in his criminal trial, obviating exclusion as a remedy. Under our holding in *Davis*, Justice Thomas's plurality in *Chavez* therefore cannot control. Thus, we are left with *Dickerson* for guidance, which, as previously discussed, leads us to conclude that the use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a § 1983 claim.[7]

Our own decisions post-*Patane* and *Chavez* further support this conclusion. In *Stoot*, we held that plaintiffs could bring a § 1983 claim based on an officer's extraction of a coerced confession that was "relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody

---

[7] *Chavez* clearly stands for the proposition that merely taking a statement without *Miranda* warnings is insufficient to give rise to a § 1983 claim. *Chavez*, 538 U.S. at 767.

status." 582 F.3d at 925. Although we did not consider the specific *Miranda* question presented here, we examined the various opinions in *Chavez* and interpreted them in a manner consistent with our interpretation here. *See id.* at 922–24; *see also Crowe v. Cty. of San Diego*, 608 F.3d 406, 429–31 (9th Cir. 2010). And in *Jackson v. Barnes*, 749 F.3d 755, 762, 767 (2014), we held that a plaintiff could bring a § 1983 suit against an officer for obtaining an un-*Mirandized* statement that was later used against him at his criminal trial, as well as against a police department for failing to supervise officers who routinely fail to give *Miranda* warnings.

Several of our sister circuits have also distinguished *Chavez*, agreeing that the use of statements obtained in violation of the Fifth Amendment against a defendant at his criminal trial may give rise to a § 1983 claim. *See Sornberger v. City of Knoxville*, 434 F.3d 1006, 1023–27 (7th Cir. 2006); *Burrell v. Virginia*, 395 F.3d 508, 513–14 (4th Cir. 2005) (holding that the plaintiff's failure to "allege any *trial* action that violated his Fifth Amendment rights" barred recovery under § 1983) (emphasis added); *Murray v. Earle*, 405 F.3d 278, 285 & n.11 (5th Cir. 2005); *id.* at 289–90 (holding that the use of an "involuntary statement" against a criminal defendant at trial could give rise to a § 1983 action); *Renda v. King*, 347 F.3d 550, 552, 557–59 (3d Cir. 2003) (recognizing that *Chavez* "leaves open the issue of when a statement is used at a criminal proceeding").

We therefore also reject the Eighth Circuit's approach in *Hannon v. Sanner*, in which the court interpreted *Dickerson* together with *Chavez* to hold that a *Miranda* violation cannot form the basis of a § 1983 claim because "the *Miranda* procedural safeguards are 'not themselves rights protected by the Constitution.'" 441 F.3d 635, 636–38 (8th Cir. 2006) (quoting *Tucker*, 417 U.S. at 444). In *Hannon*, the court

described *Dickerson* as "maintaining the status quo of the *Miranda* doctrine," such that it remained bound by pre-*Dickerson* circuit precedent that treated *Miranda* as a prophylactic rule that swept more broadly than the Fifth Amendment. *Id*. at 636–37 (citing *Warren v. City of Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989) (en banc) and *Brock v. Logan Cty. Sheriff's Dep't*, 3 F.3d 1215, 1217 (8th Cir. 1993) (per curiam)). In light of *Dickerson's* express holding, however, this cannot be correct. In *Dickerson*, the Supreme Court in no way maintained the status quo; in fact, it affirmatively backed away from previous decisions like *Quarles* and *Tucker* that had described *Miranda* warnings as merely prophylactic and "not themselves rights protected by the Constitution," the very cases *Hannon* relied upon. 530 U.S. at 437–39 (quoting *Tucker*, 417 U.S. at 444). Finding *Hannon* unpersuasive, we conclude that the use of an un-*Mirandized* statement against a defendant in a criminal proceeding violates the Fifth Amendment and may support a § 1983 claim.

## C.

To hold Deputy Vega liable under § 1983 for violating Tekoh's Fifth Amendment rights, Tekoh must also prove that his un-*Mirandized* statements were used against him and that Deputy Vega caused the violation of his right against self-incrimination. While the question of liability is ultimately for the jury to decide, we conclude that Tekoh sufficiently demonstrated a Fifth Amendment violation caused by Deputy Vega under § 1983, such that the district court erred by failing to instruct the jury on this claim.[8]

---

[8] A district court errs "when it rejects proposed jury instructions that are properly supported by the law and the evidence." *Clem v. Lomeli*,

Here, there is no question that Tekoh's statement was used against him. The statement was introduced into evidence in the failed state criminal prosecution of him. *See Stoot*, 582 F.3d at 914–16; *see also Sornberger*, 434 F.3d at 1026–27 (holding that where "a suspect's criminal prosecution was . . . commenced *because* of her allegedly un-warned confession, the 'criminal case' contemplated by the Self-Incrimination Clause has begun").[9]

There is also no question that Deputy Vega "caused" the introduction of the statements at Tekoh's criminal trial even though Vega himself was not the prosecutor. In *Stoot*, we held that a plaintiff may assert a Fifth Amendment violation against the officer who interrogated him and then included the coerced statements in the police report. 582 F.3d at 926. We explained that "government officials, like other defendants, are generally responsible for the 'natural' or 'reasonably foreseeable' consequences of their actions." *Id.* (quoting *Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007)). Joining other circuits, we held that, absent unusual circumstances, such as evidence that the officer "attempted to prevent the use of the allegedly incriminating statements . . . or that he never turned the statements over to the prosecutor in the first place," *id.* at 926 (quoting *McKinley v. City of Mansfield*, 404 F.3d 418, 439 (6th Cir. 2005)), a police officer who elicits incriminating statements from a criminal suspect can reasonably foresee that the statements

---

566 F.3d 1177, 1181 (9th Cir. 2009) (citing *Dang v. Cross*, 422 F.3d 800, 804–05 (9th Cir. 2005)).

[9] Because we do not address the circumstances present in *Sornberger*, where an un-*Mirandized* statement was used against the defendant in the commencement of her criminal prosecution but where charges were dropped prior to trial, we do not decide whether such facts could give rise to a claim for damages under § 1983. *Id.*

will be used against the suspect in a criminal case, *id*. (citing *Higazy*, 505 F.3d at 177); *see also id*. at 927 ("[O]rdinarily, 'in actions brought under § 1983 for alleged violations of [the Fifth Amendment], it is the person who wrongfully coerces or otherwise induces the involuntary statement who causes the violation of the [Fifth Amendment] privilege.'" (quoting *McKinley*, 404 F.3d at 439)).

Similarly, here, although it was the prosecutors who used Tekoh's statements at his criminal trial, it was Deputy Vega who interrogated Tekoh, prepared the incident report, and personally signed the probable cause declaration. In those documents, Vega stated that Tekoh was a suspect, that he arrested Tekoh for the charge of "Sexual Penetration by Foreign Object," and that Tekoh's incriminating statements were the basis for the report and the probable cause determination. As a result, a jury could infer that the subsequent introduction of the statements in Tekoh's criminal trial was the reasonably foreseeable consequence of Deputy Vega's conduct. *See Stoot*, 582 F.3d at 926 ("[A] jury could infer that the subsequent uses of the statements to file criminal charges against [the suspect] and to set conditions for his release at arraignment were reasonably foreseeable consequences of [the interrogating officer's] conduct.").

We do not hold that taking an *un-Mirandized* statement always gives rise to a § 1983 action. We hold only that where government officials introduce an un-*Mirandized* statement to prove a criminal charge at a criminal trial against a defendant, a § 1983 claim may lie against the officer who took the statement.[10] By contrast, in cases like

---

[10] This holding is not inconsistent with our prior holding in *Fortson v. L.A. City Atty's Office*, 852 F.3d 1190, 1192, 1194–95 (9th Cir. 2017).

*Chavez,* where the suspect was never charged, or where police coerce a statement but do not rely on that statement to file formal charges, the Fifth Amendment is not implicated. *See Stoot,* 582 F.3d at 925 n.15 (citing *Chavez,* 538 U.S. at 778–79).

### D.

Therefore, the district court erred by giving the coerced confession instruction, rather than instructing on the *Miranda* violation alone.[11]  The giving of solely the coerced confession instruction was not harmless.  "[W]e 'presume prejudice where civil trial error is concerned.'"  *Clem v. Lomeli,* 566 F.3d 1177, 1182 (9th Cir. 2009) (quoting *Dang v. Cross,* 422 F.3d 800, 811 (9th Cir. 2005)).  Deputy Vega bears the burden of demonstrating "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed."  *Id.*  Deputy Vega has not met that burden.

First, to establish a *Miranda* violation, Tekoh need only demonstrate that he was "in custody" when he was

---

In *Fortson,* we cited *Chavez* for the proposition that "failure to give *Miranda* warnings does not create liability in a civil rights action." *Id.* at 1194–95.  This reliance on *Chavez,* however, is limited to *Chavez*'s binding result that a mere failure to read *Miranda* warnings does not give rise to a claim under § 1983.  *See id.* at 1192 (explaining that Fortson's *Miranda* claim was based on the defendants' failure to read him his *Miranda* warnings, but nothing more).  The plaintiff's situation in *Fortson,* like in *Chavez,* is distinguishable from Tekoh's claim because there was no indication that the *Fortson* plaintiff's un-*Mirandized* statements were used against him in a subsequent criminal case.

[11] Of course, if the jury believes Deputy Vega's version of events, it could conclude that Tekoh was not "in custody," and thus *Miranda* warnings were not required, in which case Deputy Vega would prevail.

questioned by Deputy Vega without *Miranda* warnings. *Miranda*, 384 U.S. at 445. The district court instead required Tekoh to prove "that the confession or statement was improperly coerced and not voluntary" and that Vega "acted intentionally in obtaining that coerced confession or statement,"—a more difficult showing that effectively added two elements to Tekoh's claim. We have previously recognized that when a court improperly requires an extra element for a plaintiff's burden of proof, the error is unlikely to be harmless. *Clem*, 566 F.3d at 1182 (quoting *Caballero v. City of Concord*, 956 F.2d 204, 207 (9th Cir. 1992)).

Second, we cannot presume that the jury would have found that Tekoh was not in custody if it had been properly instructed on Tekoh's *Miranda* claim. As Deputy Vega concedes, whether Tekoh was in custody involved a disputed question of fact that turned on "credibility determinations that an appellate court is in no position to make." *Caballero*, 956 F.2d at 207; *see also id.* ("In reviewing a civil jury instruction for harmless error, the prevailing party is not entitled to have disputed factual questions resolved in his favor[.]").

Furthermore, we simply do not—and cannot—know what the jury found as to the question of custody. The district court erroneously instructed the jury to assess whether Tekoh was coerced under a totality-of-the-circumstances test, under which the *Miranda* violation was one of seven factors. Thus, it was entirely possible for the jury to find that Tekoh was in custody for *Miranda* violation purposes, but still ultimately conclude that Deputy Vega's questioning did not rise to the level of coercion—a significantly higher standard. *See, e.g., Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002) (holding that the detective's questioning of the defendant violated *Miranda*

but "did not amount to coercion or compulsion"); *Carpenter v. Chappell*, No. C 00-3706 MMC, 2013 WL 4605362, at *15–16 (N.D. Cal. Aug. 26, 2013) (same); *United States v. Betters*, 229 F. Supp. 2d 1103, 1108 (D. Or. 2002) (same). Indeed, Deputy Vega's testimony supported Tekoh's claim that he was not free to leave during the interrogation.

Therefore, we cannot conclude "that it is more probable than not that the jury would have reached the same verdict had it been properly instructed." *Clem*, 566 F.3d at 1182 (citation omitted). Because we do not believe that Deputy Vega has made such a showing, the error was not harmless. We thus vacate the judgment on the jury's verdict and remand the case for a new trial, in which the jury must be properly instructed that the introduction of a defendant's un-*Mirandized* statement at his criminal trial during the prosecution's case in chief alone is sufficient to establish a Fifth Amendment violation.

**IV.**

Because we remand for a new trial, we need not reach the question of whether the district court abused its discretion by excluding the testimony of Tekoh's coerced confession expert, Dr. Blandon-Gitlin. On remand, we leave it to the district court to consider whether the expert should be permitted to testify given the questions that remain.

**V.**

We vacate the judgment on the jury's verdict, reverse the district court's judgment as to Tekoh's requested jury instruction, and remand the case for a new trial, in which the jury must be properly instructed that the introduction of a defendant's un-*Mirandized* statement at his criminal trial during the prosecution's case in chief is alone sufficient to

28        TEKOH V. COUNTY OF LOS ANGELES

establish a Fifth Amendment violation and give rise to a § 1983 claim for damages.  The parties shall bear their own costs of appeal.

**VACATED; REVERSED AND REMANDED**

**United States Court of Appeals for the Ninth Circuit**

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ▶ A material point of fact or law was overlooked in the decision;
  - ▶ A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ▶ An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

- ► Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or
- ► The proceeding involves a question of exceptional importance; or
- ► The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**
- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**
- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**
- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ▶ Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ▶ and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                               **Date**

*(use "s/[typed name]" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| **TOTAL:** | | | | $ |

***Example:** Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 10**                               *Rev. 12/01/2018*